*(Circuit Court of Cook County. In Chancery.)*

## The Union Pressed Brick Co.

### vs.

## Chicago Hydraulic Pressed Brick Co., et al.

(July 29, 1899.)

1. CONTRACTS—RESTRAINT OF TRADE—VALIDITY OF AGREEMENTS TO SELL TO CERTAIN PERSONS ONLY. An individual or corporation, may enter into a contract to sell its property, merchandise, or its labor to certain persons and none others. Individuals or corporations have the right to refuse to contract with other individuals or corporations. But in so contracting or refusing to contract they must not commit a criminal offense.

2. CONTRACTS IN RESTRAINT OF TRADE—PROHIBITION OF BY STATUTE. Where the legislature has seen fit to abridge the right of contracting, and declare that certain contracts are criminal offenses, then such contracts and combinations are without the pale of the law and will not be sustained and carried out by the courts.

3. INJUNCTION TO RESTRAIN A CRIMINAL OFFENSE. As a broad proposition an injunction will not lie to prevent the commission of a criminal offense, but if the commission of a crime against the State will result in damage to the property of an individual, an injunction will lie to prevent such injury if the remedy at law is inadequate. Where the commission of crime will entail property loss to a private citizen for which he has no adequate relief at common law, courts of equity should give redress to the person who has been made to suffer such irreparable injury.

4. COMBINATIONS AND MONOPOLIES IN RESTRAINT OF TRADE—AGREEMENTS TO CONTROL PRICE OF BRICK. Where certain brick manufacturers, entered into an agreement with a masons' and builders' association, which comprised practically all the persons engaged in brick and mason work in Chicago and Cook County, Illinois, under which the members of the association were bound to purchase all brick used by them from said manufacturers, the price being increased and the additional profits paid into a pool to be divided pro rata among the brick manufacturers, and the association; *held* that this constituted a conspiracy and combination in violation of the anti-trust acts of Illinois.

Bill for injunction to restrain an unlawful combination in restraint of trade. Circuit court of Cook County, Gen. No.

196,935. Heard on bill and affidavits in support thereof, and demurrer to bill, before Judge Edward F. Dunne.

The facts are stated in the opinion.

*Newman, Northrup & Levinson,* solicitor for complainant.

*Darrow, Thomas & Thompson, Henry M. Matthews,* and *Gott & Robinson,* solicitors for defendants.

DUNNE, J.:—

The complainant in the case at bar has filed a bill for injunction, the salient allegations of which are as follows:

That it is a corporation engaged in the manufacture and sale of pressed and sewer brick; that it has fully one hundred thousand dollars ($100,000.00) invested in its business; that in the year 1898 it sold 2,300,000 pressed brick in the county of Cook and realized many thousand dollars profits therefrom; that during the month of April, 1899, it sold in said county over 750,000 brick, and during the first eight days of May about 400,000; that on the 9th day of May, 1899, the defendants entered into a conspiracy, hereinafter set forth, as a result of which its sales of brick during the months of May and June amounted to only about $25,000; that including the complainant there are six firms and corporations engaged in the business of selling pressed brick in the city of Chicago and county of Cook; that up to May 9th, 1899, the complainant was selling such brick at from ten to eighteen dollars per thousand on the Chicago market; and that all of said other companies were selling the same character of brick for higher prices than the prices at which complainant was selling said brick, which were fair and reasonable and yielded to complainant a fair, reasonable and satisfactory profit; that the demand for complainant's brick was very large and steadily increasing from April 1st, 1899, down to May 9th, 1899; that the defendant, the Chicago Masons' and Builders' Association, is an incorporated company; that it contains among its members at least two-thirds of all the persons and firms and corporations in the city of Chicago and in the county of Cook engaged in the business of constructing brick and mason work, and practically all of the substantial and reliable

persons, firms and corporations engaged in that business in said city and county; that the members of said association have constructed over 95 per cent. of the brick and mason work in said county during the year 1899; that the purpose and object of said association, as stated in its Constitution and By-laws is "for the purpose of producing uniformity of action in regard to the various matters involving their mutual interest;" that said association, under article 13 of its By-laws, has created a Committee of Arbitration; that this committee, under article 13, has the right to "enter into agreements and formulate working rules binding upon this association and its members, and is empowered, to enforce the same;" that said Committee of Arbitration for many months last past have had arbitrary control of the acts and conduct of the members of said association in and about and in connection with the entering and fulfillment of contracts for brick and mason work; and the power to determine from what persons, firms and corporations the members of said association shall be permitted to purchase building materials; that said committee has frequently exercised said power and authority and has enforced the same by fines and penalties. That by Rule 9 of the Working Rules, it is provided that members of said Association will employ members of the Brick-Layers Association, and none others, and that members violating any of the rules of said association shall be fined by the Arbitration Committee not less than five dollars for each offense; but that this rule shall not apply to rules where special fines are provided; that by Rule 14 of said association, any member fined shall stand suspended in all the rights and benefits of the association until his fines are paid; that there exists in the city of Chicago and county of Cook, a Mason & Brick-Layers Union, which said union comprises at least 75 per cent. of the efficient and competent journeymen, stone masons and brick-layers, in said Cook county; that said union has adopted a working rule in which it is provided that the members of said union will work for members of the Masons & Builders' Association and (with some immaterial excep-

tions) none others; that by means of the rules adopted by the Masons & Builders' Association and the Brick-Layers' Union the members thereof have secured and exercised, and do now practically exercise complete control over the entire business of constructing brick and mason work in the county of Cook; that no member of the Brick-Layers' Union will lay brick except for a member of said Mason & Builders' Association, and that as a result thereof the members of said Masons & Builders' Association have constructed over 95 per cent. of the brick and mason work during the year 1899, and have had practically the exclusive control and monopoly thereof; that four of the defendants, to-wit. The Chicago Hydraulic Pressed Brick Company; the Cayuga Pressed Brick Company; Thomas C. Moulding Company; and Charles Bonner, being manufacturers and dealers in pressed brick, have entered into a fraudulent and corrupt conspiracy between themselves and the said Masons & Builders' Association, in restraint of the sale of and trade in pressed brick and paving brick for building purposes, in the county of Cook, and to secure to themselves a sole monopoly in the sale thereof in said county of Cook at arbitrarily increased prices, the terms of which conspiracy are as follows:

That said four brick dealers would from and after May 9th, 1899, arbitrarily increase the price of all pressed brick and paving brick for building purposes, to the amount of three dollars per thousand over and above the price for which they had been selling brick hitherto, and would not sell any such brick except at said increased prices; and that of said increased price per thousand, two dollars should be paid into a fund or pool which should be held by said four conspiring brick dealers, to be divided by them pro rata, among said conspiring brick dealers, and the remaining one dollar per thousand of such increased price should be paid over to the Masons' & Builders' Association, for and in consideration of the fraudulent agreements on the part of said Masons' & Builders' Association, to buy or use, or permit to be used in said Cook county no pressed brick or paving brick for build-

ing purposes whatever, at any price whatever, except those which should be sold by said four conspiring brick dealers, or some one of them.

It is further alleged that as part of said agreement between said four conspiring brick dealers and the Masons' & Builders' Association, that they covenanted and agreed with each other, that should any member of the said Masons' & Builders' Association, use or permit to be used any pressed brick or paving brick for building purposes, other than that bought from said four conspiring brick dealers, or one of them, that then and in such case, such member should be fined by the Masons' & Builders' Association, the sum of four dollars per thousand for each thousand brick so used or purchased from others than the said four conspiring brick dealers, or one of them, and should also be punished for such action by other heavy fines and penalties, which would be imposed by said Masons' & Builders' Association, in each case, according to the arbitrary discretion of the officers of said association; that said agreement between said Masons' & Builders' Association and said four conspiring brick dealers, went into effect on or about the 9th day of May, 1899, and has ever since remained in full force and effect; that on or about said date said four conspiring brick dealers arbitrarily increased the price of pressed brick and paving brick for building purposes, to the amount of at least three dollars per thousand, for each thousand, over and above the price at which they were selling the same on May 9th, 1899; and have ever since said date sold and still continue to sell said pressed brick and paving brick at said increased price; and that by reason of said agreement and conspiracy between said four conspiring brick dealers and the Masons' & Builders' Association, said conspiring four brick dealers have ever since May 9th, 1899, been able to sell and have sold practically all the pressed brick and paving brick for building purposes that has been sold in the county of Cook, and have prevented the complainant and other dealers not in the conspiracy from selling any pressed brick or paving brick in said Cook county since May 9th, 1899; that many

of the members of sasid Masons' & Builders' Association are willing and anxious to purchase brick of complainant, but stand in fear of the rules, regulations, fines and penalties adopted by said association, and by reason of such fear decline to buy brick from the complainant, while some members of said association have ordered brick of the complainant but have countermanded their order, by reason of such rules, fines and penalties; that by reason of the acts.and penalties of the said defendants, hereinbefore mentioned, the complainant has ever since May 9th, 1899, been wholly prevented from selling pressed brick or paving brick in Cook county, which it would have otherwise sold, and has thereby lost and been deprived of certain large profits which it would otherwise have made in the sale thereof, and that its said trade has been greatly damaged and injured and the reputation of the said brick so sold by complainant has been greatly impaired among contractors and builders and other persons; that the complainant is under an expense amounting to two thousand dollars per month for wages and salaries of its employees and that by reason of said conspiracy it is carrying on its said business at a great and constant loss, which said loss is necessarily impossible and will be necessarily impossible to demonstrate with accuracy in a suit at law, and that the damage to the complainant's business is continuous and irreparable.

Upon these allegations complainant asks the court to enjoin the defendants from further continuing said conspiracy and from directly or indirectly enforcing said pressed brick rules, and from continuing or permitting to be continued any agreement or arrangement between said Masons' & Builders' Association and said four conspiring brick dealers, which provides that all pressed or paving brick shall be purchased by members of said association from no other person or firm save and except the said four conspiring brick dealers.

The petitioner further prays for a mandatory injunction, commanding said firms and the Masons' & Builders' Association to rescind said pressed brick rules and regulations of like nature, heretofore enacted, and requiring said association to

notify the members of said Masons' & Builders' Association that said rules are rescinded and annulled, and for other relief.

The defendants have filed a general demurrer to this bill of complaint, and the complainant asks for a temporary injunction, based upon the allegations of the bill, admitted by the demurrer to be true, and the affidavits filed in support of the same.

It is contended by counsel for the defendants, that a court of chancery is not justified in granting an injunction upon the allegations of the bill; that the members of the Masons' & Builders' Association, and the four brick dealers in question, had an undoubted right to enter into the arrangement or contract set out in the bill of complaint; that any individual or corporation has the right to contract with any other individual or corporation for the purchase or sale to it or him, of its merchandise, property or labor, and that any individual or corporation has the right to refuse to contract with any other individual or corporation in the community, for the sale of its merchandise, property or labor, and that what any one individual or corporation may do a combination of individuals or corporations has the right to do, and that a court of equity should not impair the right of free contract by interfering with injunctional power for the object of preventing the carrying out of such contracts.

It is undoubtedly true that an individual or corporation may enter into a contract to sell its property, merchandise, or its labor, to certain persons and none others. It is also true that individuals or corporations have the right to refuse to contract with other individuals or corporations. But these propositions are subject to this modification: That in contracting, or refusing to contract, they do not commit a criminal offense.

Where the legislature in its wisdom, has seen fit to abridge the right of contracting and declared that certain contracts are criminal offenses, then such contracts and combinations are without the pale of the law and instead of being sus-

tained and carried out by the courts, must receive their condemnations.

The legislature of the state of Illinois doubtless having in view just such combinations as that set out in the bill in this case, passed in the year 1897 an act making criminal "a combination of capital, skill or acts, by two or more persons, firms, corporations or associations of persons, or two or more of them, for either, any, or all of the following purposes: First: to create or carry out restrictions in trade; second, to increase the price of merchandise or commodities; and third, to prevent competition in the sale or purchase of merchandise or commodities." [1]

Can it be doubted, that if the defendants in the case at bar have entered into the arrangement set out in complainant's bill of complaint, that the aim, object and natural effect of this combination would be to restrict trade; to increase the price of pressed and paving bricks; and to prevent competition in the sale thereof?

If the effect of the combination set out in the bill of complaint, is to restrict trade, to increase the price of pressed brick and paving brick, and to prevent competition in the sale thereof, it is a crime, so made by the statute of 1897, and if it be a crime it is not a contract or combination which any firms, corporations or individuals had the right to enter into.

Counsel for defendants have cited to this court numerous authorities in support of their contention that the defendants in this case had a right to enter into this contract or combination but all of these cases will be found, upon examination, to have been decided before the passage of the anti-trust law in this state, or in states and countries where no such anti-trust laws are found in the statute books; or they have been decided without the attention of the court being called to the statute in question.

---

[1] The anti-trust act of 1897 was held unconstitutional in *People ex rel v. Butler Street Foundry & Iron Co.*, 201 Ill. 236. See also, *People v. Richards & Kelly Mfg. Co.*, 1 Ill. C. C. 181, note; and *Taylor v. Pullman Co.*, 1 Ill. C. C. 50, note. The original act of 1891 of which the act of 1897 was an amendment is still in force.—Ed.

Counsel for the defendants further contend, that even if the combination set out in the bill of complaint, is a criminal offense, that it is punishable by the state laws, and that no individual has a right to complain thereof, except in the criminal courts of the state. And counsel argues with great force, that an injunction will not lie to prevent the commission of a criminal offense.

As a broad proposition this is undoubtedly the law. The criminal procedure of the state is or ought to be, adequate to prevent the commission of a crime, but none the less, if the commission of a crime against the state will result in damage to the property of an individual, no one will question but that the individual has the right to civil redress in the courts for the damage to his property.

If a malefactor burned down the house of a citizen, he may be punished in the criminal court for arson. None the less he may, if financially responsible, be compelled to compensate the owner of the house, in an action on the case for damages. If a citizen has the right to sue civilly a criminal who has damaged his property and recover compensation from a financially responsible criminal, by what rule of law or equity should he be denied the right to prevent by injunction the injury to his property, if the remedy at common law is inadequate?

If a lot of irresponsible men should conspire to burn down the house of a citizen and thus inflict an irreparable loss on him, must he take the chance of arresting them and proving their guilt in the criminal court, and in the meantime have his house destroyed? Or, should he not, as in every case where he can show irreparable injury, appeal to a court of chancery and by showing that such injury would be irreparable to him, obtain by injunction an order restraining them from entering upon his property for the purpose of committing such illegal act?

A court of equity ought not be permitted to enjoin crime, as crime, because it has no criminal jurisdiction and the machinery of the criminal law is supposed to be adequate to prevent the

same. But if the commission of such crime involved the loss of private property the owner thereof should and can obtain redress for his loss in a court of common law, where that relief is adequate. Where the commission of such crime will entail property loss to a private citizen for which he has no adequate relief at common law, the courts of equity should give redress to the person who has been made to suffer such irreparable injury.

In such cases it is true it should clearly appear, first, that the commission of such criminal offense would entail a private loss; and, secondly, that the remedy afforded at common law for such loss is clearly and unmistakably inadequate.

This is not the enunciation of any new doctrine. In *Springhead Spinning Co. v. Riley, L. R.* 6 Eq. 551, it was held upon demurrer (syllabus): "That the acts of the defendants, as alleged by the bill, amounted to crime, and that the court would interfere by injunction to restrain such acts, inasmuch as they also tended to the destruction or deterioration of property."

Sir R. Malins, V. C., in passing upon this identical question, makes use of this language (p. 558):

"The jurisdiction of this court is to protect property, and it will interfere by injunction to stay any proceedings, whether connected with crime or not, which go to the immediate, or tend to the ultimate destruction of property, or to make it less valuable or comfortable for use or occupation."

Lord Eldon, in the case of *Macauley vs. Shackell,* 1 Bligh (N. S.) 96, 127, says: "The court of equity has no criminal jurisdiction, but it lends its assistance to a man who has, in the view of the law, a right of property, and who makes out that an action at law will not be a sufficient remedy and protection against intruding upon his publication."

In *Hopkins vs. Oxley Stave Co.,* 83 Fed. 912, the court held (syllabus):

"First, that the combination in question was an unlawful conspiracy to deprive the plaintiff of its right to manage its business as it thought best, such as would entitle the manufac-

turer to recover from the parties concerned in the conspiracy whatever damages it had sustained thereby; second, that in such a case the test of the right to sue in equity was whether the damages occasioned by the conspiracy would be irreparable, or whether a proceeding in equity was necessary to prevent a multitude of suits,—in other words, whether the remedy at law was for any reason inadequate; third, that in the case in hand the plaintiff was entitled to sue in equity, and that an injunction to prevent the execution of the conspiracy was properly awarded." And in the opinion, the court declares, (p. 918) :

"The test of the right to sue in equity, is whether the combination complained of is so far unlawful that an action at law will lie 'to recover the damages inflicted,' and whether the remedy at law is adequate to redress the wrong. If the remedy at law is for any reason inadequate, resort may be had, as in other cases, to a court of equity."

In *Nashville, C. & St. L. Ry. Co. v. McConnell*, 82 Fed. 65, the court quotes the following language:

"Again, it is objected that it is outside of the jurisdiction of a court of equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned. A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature; but when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by, or are themselves, violations of the criminal law."

And in *Port of Mobile v. Louisville & N. R. Co.*, 84. Ala. 115–126, 4 So. 106, 112, the court declares:

"The mere fact that an act is criminal does not divest the jurisdiction of equity to prevent it by injunction, if it be also a violation of property rights, and the party aggrieved has no other adequate remedy for the prevention of the irreparable

injury which will result from the failure or inability of a court of law to redress such rights.''

It is true that most, if not all of these cases are ones in which a court of equity gave relief by injunction, as against striking workingmen. But if it be the law as against workingmen, why should it not also apply to capitalists?

The defendants in the case at bar, under the allegations of the bill, have practically a monopoly of the pressed and paving brick business in the County of Cook, but the same rule of law should apply to them as to the workingmen, especially in view of the fact that it is alleged in the bill that the damages occasioned by their conduct, are not capable of being definitely ascertained in a court of law; that the business of the complainant is being ruined; and that its damages would be irreparable.

If the allegations in the bill of complaint are true, as the demurrer admits, the defendants are engaged in the commission of a crime punishable by a fine of not less than two thousand dollars ($2,000.00), and a forfeiture of all their corporate rights. In the perpetration of this crime, under the allegations in the bill, they are entailing irreparable financial loss to the complainant. To refuse it relief by injunction and relegate it to a court of common law, for the purpose of attempting to ascertain its loss after its business is ruined, would be denying it the relief which, under every principle of equity, it is entitled to.

In the absence of a statute making such an agreement criminal, the complainant might be, under the older authorities, without remedy, but in view of the plain provision of the anti-trust law of this state, and the authorities rendered in jurisdictions where such laws are in force, the right to relieve by injunction is, in the judgment of this court, unquestioned.

Note.—The above case is referred to in a note in 64 L. R. A. 720. See also *Sanford v. People*, 121 Ill. App. 619, where the court held the same combination to be illegal.—Ed.